**Allen DEROSE Defendant Below Appellant,**

v.

**STATE of Delaware, Plaintiff Below Appellee.**

**No. 53, 2003.**

Supreme Court of Delaware.

Submitted: July 8, 2003.

Decided: Aug. 21, 2003.

---

16.  *Id.*

Ralph D. Wilkinson, IV, Office of the Public Defender, Wilmington, for Appellant.

John Williams, Delaware Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, BERGER, and STEELE, Justices.

PER CURIAM:

On May 22, 2002, a New Castle County Superior Court jury convicted Appellant, Allen Derose, of Assault in the Second Degree[1] and Endangering the Welfare of a Child.[2] In this appeal, Derose argues that the trial judge erred by not granting his motion for a new trial based on alleged prosecutorial misconduct. Specifically, Derose argues that the prosecutor made several improper comments that: (i) expressed personal beliefs about the credibility of witnesses; (ii) misrepresented the evidence presented at trial; (iii) denigrated the value of defense counsel; (iv) appealed to the jury's sense of personal risk or level of community safety; and (v) constituted repetitive errors that cast doubt upon the integrity of the judicial process.

We hold that the trial judge did not abuse his discretion by denying Derose's motion for a new trial. The comments that Derose did not object to at trial did not constitute plain error, and Derose's argument that the comments were repetitive and cast doubt upon the integrity of the judicial process is misplaced. Therefore, we affirm.

*Factual and Procedural Background*

On April 20, 2001, Derose quarreled with his wife at their New Castle County apartment. Derose's children, who played noisily in the same room, and Michael Taylor, a neighbor, were also present. Taylor testified that Derose became very angry during the argument with his wife and vulgarly reprimanded the children for their loud behavior. When the children did not become quiet, Derose struck the three-year-old more than ten times all over her body. Derose beat the child with his belt and the belt's buckle struck the child near the eye. At that point, Taylor shoved Derose against a wall to stop the beating, returned home, and called the police.

A New Castle County police officer responded to the call. The officer arrived at Taylor's residence, where Derose's wife and children had sought refuge after the altercation. Derose telephoned Taylor's residence and spoke to the officer. The officer requested that Derose come to Taylor's residence and explain the situation. Derose refused, stating that he did not want to be arrested. The officer then visited Derose's apartment, but Derose had already fled. The officer testified that the child had a one-and-a-half inch bruise along the left cheek near her eye.

A pediatric emergency doctor testified that he treated the child. The doctor tes-

---

1. 11 *Del. C.* § 612.

2. 11 *Del. C.* § 1102.

tified that the child was admitted to the Emergency Room because of the evident injury and suspicion that she had been struck by a belt. The child had an L-shaped, red lesion lateral to the left eye with numerous burst blood vessels, numerous scratches on her abdomen, two circular bruises on her back, and an angulated, raised, red bruise on her left arm. The doctor also testified that the injuries were recently inflicted and consistent with injuries caused by a belt or a similar object.

## Discussion

■ Before addressing Derose's specific complaints on appeal, we restate the now settled Delaware law under which we examine alleged "prosecutorial misconduct." The prosecutor "represents all the people, including the defendant" and must "seek justice, not merely convictions."[3] In pursuing both goals, the prosecutor should abide by the American Bar Association's standards governing prosecution and defense functions.[4] Consistent with those standards, the prosecutor should not: (i) express personal beliefs as to the credibility of witnesses; (ii) misrepresent the evidence presented at trial; (iii) comment on the fact that a defendant exercised the right to remain silent; (iv) denigrate the role of defense counsel; (v) misrepresent the legal effect of defendant's statements; (vi) appeal to the jury's sense of personal risk or the level of safety in the communi-

ty; or (vii) attempt to inflame the prejudices of the jury by name-calling or other pejorative language.[5] Not all improper remarks made by prosecutors require reversal of a conviction, however. Reversal is warranted where an improper comment "prejudicially affects substantial rights of the accused."[6]

■ Whether substantial rights of the accused were prejudicially affected depend on: (i) the closeness of the case; (ii) the centrality of the issue affected by the alleged error; and (iii) the steps taken to mitigate the effects of the error.[7] Therefore, the one comment that Derose did object to at trial, if found improper, will be subject to the *Hughes* test to determine whether the trial judge abused his discretion by denying the motion for a new trial.

■ The standard of review for comments that are not objected to is plain error.[8] To constitute plain error, the error must be so clearly prejudicial to substantial rights that it jeopardizes the fairness and integrity of the trial.[9] In addition, "the prosecutor's improper statements must 'be so clear and defense counsel's failure to object so inexcusable that a trial judge ... has no reasonable alternative but to intervene *sua sponte* and declare a mistrial or issue a curative instruction.' "[10] The comments Derose did not object to at trial, if found improper, will be subject to

3. *Hunter v. State,* 815 A.2d 730, 735 (Del. 2002) (quoting *Bennett v. State,* 164 A.2d 442, 446 (Del.1960)).

4. *Id.* at 735.

5. *Id.* (internal citations omitted).

6. *Hughes v. State,* 437 A.2d 559, 566 (Del. 1981) (quoting *Sexton v. State,* 397 A.2d 540, 544 (Del.1979)).

7. *Id.* at 571 (quoting *Dyson v. United States,* 418 A.2d 127, 132 (D.C.1980)).

8. *Swan v. State,* 820 A.2d 342, 354 (Del.2003) (citing *Trump v. State,* 753 A.2d 963, 970 (Del.2000)).

9. *Swan v. State,* 820 A.2d 342, 354 (Del.2003) (citing *Capano v. State,* 781 A.2d 556, 563 (Del.2001)).

10. *Bruce v. State,* 781 A.2d 544, 554–55 (Del. 2001) (quoting *Trump v. State,* 753 A.2d 963, 964–65 (Del.2000)) (emphasis in original).

plain error analysis to determine whether a new trial is warranted.

■ In *Hunter v. State*, this Court held that the three part test in *Hughes* now includes an additional factor to be considered in determining the basis for reversal—whether the prosecutor's errors are repetitive, i.e., whether there is a pattern or history of professional misconduct or repetitive use of improper statements that has persisted despite the Court's off-repeated admonitions.[11] This standard, however, is not retroactive, and applies only to prosecutorial comments made after the *Hunter* decision.[12]

■ Derose objects to the prosecutor's comments that "[t]he law ... protects [the victim] who was struck repeatedly. The law, as you are asked to apply it today, is not for the protection of a defendant, ladies and gentlemen." [13] Derose argues, first, that this comment instructed the jury to disregard the reasonable doubt standard. Second, Derose argues that this comment improperly appealed to the jury's sense of personal risk or community safety.

The statement complained of here is not a basis for reversing Derose's conviction because it fails the *Hughes* test. It did not "prejudicially affect the substantial rights of the accused" for two reasons. First, the case was not close because there was overwhelming evidence of Derose's guilt. For instance, Derose's neighbor, Taylor, witnessed the assault and the doctor's examination corroborated Taylor's testimony. Derose also refused the officer's request to return to the scene because he stated that he did not want to be arrested. Second, the trial judge's curative instruction sufficiently mitigated the effects of the comment. Immediately following the comment, the trial judge instructed the jury to disregard it. In addition, the trial judge instructed the jury to consider all of the evidence impartially, without passion and sympathy, and that no attorney's comments should be considered as evidence. These instructions ameliorated the prosecutor's comment.[14] Therefore, the trial judge did not abuse his discretion when he denied Derose's motion for a new trial based on the sole allegation of improper prosecutorial conduct to which Derose timely objected.

■ The first comment to which Derose did not object that he now challenges relates to the doctor's diagnosis of the child's injuries. The prosecutor stated: "It wasn't because he jumped to a conclusion. He doesn't have a dog in the fight so to speak. He's here to come to a medical conclusion for a treatment of a child." [15] Derose argues that this statement expresses the prosecutor's personal belief in the doctor's credibility. This argument is without merit because it overstates the alleged prejudicial inference Derose would have us draw from it. This statement simply suggests to the jury that the doctor was not biased when he diagnosed the child, and had no incentive to diagnose the child differently. It does not show that the prosecutor endorsed the doctor's credibility.

---

11. *Hunter v. State*, 815 A.2d 730, 732 (Del. 2002).

12. *Chapman v. State*, 821 A.2d 867, 870 (Del. 2003); *Christopher v. State*, 2003 Del. Lexis 311, *5 (Del.2003).

13. Appendix to Appellant's Op. Br. at 23.

14. *See, e.g., Pennell v. State*, 602 A.2d 48, 52 (Del.1991) (holding that "even when prejudicial error is committed, it will usually be cured by the trial judge's instruction to the jury to disregard the remarks.").

15. Appendix to Appellant's Op. Br. at 20.

■ The next comment to which Derose objects for the first time on appeal pertains to Taylor's testimony about intervening in the altercation. The prosecutor stated: "I know what I would do. I would like to think I would do what Mr. Taylor did and, at some point, say, hey, enough, back off, and he did." [16] The prosecutor then stated that it was reasonable that Taylor would leave the scene after such an awkward encounter. Derose argues that these comments express the prosecutor's personal beliefs about Taylor's credibility. This argument is also without merit. Although the use of the word "I" is often problematic when used by a prosecutor referring to evidence, it is not here. [17] The prosecutor merely referred to Taylor's reaction to the assault and that the jury should and could fairly conclude that the reaction was reasonable under the circumstances. The comments do not amount to plain error.

■ The third comment to which Derose did not object at trial concerns society's varying view of the consequences of striking a person with a belt and the injuries that could result from such a beating. The prosecutor stated:

This child was struck with a belt. Striking a child with a belt is not a crime. Many of us have been struck with a belt. And years ago, things were a little different, but even today, you strike the child with a belt, that doesn't make you a criminal. I'm not saying doing that in and of itself would have been a crime,

but it's the way in which the defendant acted and how he acted under the circumstances, recklessly causing physical injury and using the belt in a manner in which he did which could have resulted with ... the loss of an eye for this child. [18]

Derose argues that this comment expresses the prosecutor's personal opinion because she did not support it with trial evidence immediately before making it. This argument is without merit. The prosecutor made the statement during summation, shortly after recounting the doctor's and Taylor's testimony, all of which was, in fact, in the record. Taylor's testimony established that Derose did strike the child with a belt and the doctor testified that the child could have lost an eye if the belt buckle had struck the eye directly.

■ The next series of comments to which Derose did not object concern suggestions of Derose's guilt. The prosecutor stated that the defendant "knew he committed a crime. And he was right." [19] The prosecutor also stated that "the defendant unjustifiably inflicted physical injury on [the child]" and "the defendant's loss of control and outrage resulted in his criminal responsibility." [20] Finally, the prosecutor stated that the defendant was "also guilty ... of endangering the welfare of a child [and] striking a three year old ... repeatedly." [21] Derose argues that these statements of guilt were personal opinions and not supported by the evidence at trial. Relying on *Bruce v. State*,[22] Derose also

---

16. *Id.*

17. There is no *per se* rule that the use of the word "I" or "we" is improper. *Swan v. State,* 820 A.2d 342 (Del.2002); *Cousins v. State,* 793 A.2d 1249, 2001 WL 1353571at **1, 2001 Del. Lexis 513, *3 (Del.Supr.) (citing *Trump v. State,* 753 A.2d 963, 968 (Del.2000)).

18. Appendix to Appellant's Op. Br. at 21.

19. *Id.*

20. *Id.* at 22.

21. Appendix to Appellant's Op. Br. at 23.

22. 781 A.2d 544, 555 (Del.2001) (citing *McCowan v. United States,* 458 A.2d 1191, 1197 (D.C.1983)).

argues that the comments were improper because prosecutors are forbidden from making comments that would cause the jury to "take the defendant's guilt as a foregone conclusion." The first argument is without merit when the comments are considered in their proper context. A prosecutor, in final summation, is not confined to a repetition of the trial evidence, but is allowed and expected to explain all the legitimate inferences of guilt that flow from the evidence.[23] Derose has removed these statements from their context. They were made during summation, shortly after the prosecutor recounted the testimony that: (i) the defendant beat the child; (ii) the defendant refused to return to the scene because he feared being arrested; and (iii) the injuries were consistent with Taylor's eyewitness testimony. Taken in context, the comments were legitimate inferences that could be drawn from the trial evidence of record pointing to Derose's guilt. The second argument is also without merit because Derose misapplies *Bruce*. In *Bruce*, this Court stated that it is usually inappropriate for a prosecutor to mock the defense's efforts sarcastically or to make comments that would cause a jury to assume that guilt is a foregone conclusion.[24] In fact, *Bruce* concerned prosecutorial comments that implied guilt as a foregone conclusion by belittling the defense by describing the defense's case as a "shotgun approach."[25] *Bruce* did not focus on logical inferences that could be drawn from the evidence pointing to the defendant's guilt. Here, the prosecutor's comments did not "take the defendant's guilt as a forgone conclusion" by mocking the defense. Rather, the prosecutor argued those legitimate inferences that could

be fairly drawn from the trial evidence that should persuade the jury of Derose's guilt. The prosecutor's "comments on guilt" were not improper.

The next comment about which Derose did not object regards the prosecutor's recounting of Taylor's version of the assault. The prosecutor stated: "The force used on [the child] was not reasonable and moderate. The defendant took no action before flying off the handle and using physical violence on his children."[26] Derose argues that this comment is a misrepresentation of the evidence presented at trial. He asserts that the comment is not a precise restatement of Taylor's eyewitness testimony because Taylor testified that Derose orally reprimanded the child before striking her. This assertion is without merit because the discrepancy is immaterial. Whether the prosecutor omitted the fact that Derose orally attempted to "correct" his child and, therefore, arguably hesitated before inflicting corporal punishment by beating his child numerous times with a belt and buckle does little, if anything, to prejudice him in this assault case. Derose's actions *after* he may have concluded that oral correction was unavailing were the focus of the trial. Those actions were to be scrutinized by the jury to determine criminal conduct and could not have been excused by any rational person simply because they were preceded by an oral reprimand.

The final comment to which Derose did not object relates to the prosecutor's comments on the doctor's testimony. In response to the defense's statement that the doctor knew about the suspicion that the child was abused with a belt be-

23. *Hughes,* 437 A.2d at 567.

24. *Bruce v. State,* 781 A.2d 544, 555 (Del. 2001) (citing *McCowan v. United States,* 458 A.2d 1191, 1197 (D.C.App.1983)).

25. *Id.*

26. Appendix to Appellant's Op. Br. at 21.

fore examining the child, the prosecutor stated that the doctor's diagnosis "wasn't planted in his mind despite what the defense may have you believe."[27] Derose alleges that this comment denigrated the role of defense counsel because the prosecution essentially stated that the defense knowingly tried to mislead the jury. Although it is arguable that this argument comes close to improper burden shifting and suggests an attempt to denigrate defense counsel, it is wholly without merit because it is merely comment on an inference suggested by defense counsel based on the evidence addressed at trial. In *Hunter*, this court held that comments stating that the defense tried to "fool" the jury were improper.[28] This comment, however, is substantially different from the comment made here. Suggesting that the inference that the defense would have the jury draw would be incorrect does not amount to an accusation that the defense tried to "fool" a jury. To rule otherwise, would be tantamount to pulling the adversarial teeth from an effective prosecutor's mouth in summation. Furthermore, the statement did not jeopardize the fairness and integrity of Derose's trial because the record contains ample evidence supporting the prosecutor's argued view of the doctor's testimony.

The comments to which Derose did not object do not constitute plain error even when considered cumulatively. They had a minute, if any, unfair prejudicial effect on Derose's trial. They certainly did not render the defense's failure to object so inexcusable that the trial judge had no reasonable alternative but to intervene *sua sponte* and declare a mistrial or issue a curative instruction.

Derose's final argument, that the allegedly improper comments were repetitive in nature and "cast doubt on the integrity of the judicial process," is misplaced. Although this Court has held that the prosecutor's office shall be held to a standard prohibiting repetitive misconduct,[29] the standard is not retroactive and only applies to prosecutorial comments made after the *Hunter* decision because "prosecutors were not on notice that their conduct would be measured by standards not then in effect."[30] This trial occurred approximately seven months before the *Hunter* decision, and the prosecutor's comments are not subject to the *Hunter* analysis.

### Conclusion

We find that the trial judge did not abuse his discretion when he denied Derose's motion for a new trial. A timely curative instruction properly addressed any unfair prejudice that could have occurred from the one comment to which Derose did object at trial. The comments by the prosecutor to which he did not object at trial, even if improper, did not constitute plain error, either individually or cumulatively. Finally, *Hunter* cannot apply to Derose's trial retroactively. Based on the foregoing, the judgments of conviction in the Superior Court are AFFIRMED.

---

27. *Id.* at 20.

28. *Hunter,* 815 A.2d at 736.

29. *Id.* at 737–38.

30. *Chapman,* 821 A.2d at 870; *Christopher,* 2003 Del. Lexis 311, at *5.